**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **LAUREN MARKEE BAKER,** ) | |
| Plaintiff, ) | Case No. 7:22-cv-00353 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **SGT. TRAVIS HAMILTON,** ) | Chief United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION**

Lauren Markee Baker, a former inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Sgt. Travis Hamilton. At the time of the events at issue, Baker was confined at the New River Valley Regional Jail ("NRVRJ") in Dublin, Virginia, where Hamilton served as the Classifications Sergeant. Baker claims that Hamilton violated her constitutional rights by using excessive force against her and by retaliating against her for filing a grievance accusing him of discrimination. Hamilton has filed a motion for summary judgment to which Baker has responded. For the reasons set forth below, the motion for summary judgment, ECF No. 30, is **DENIED**.

**Factual Background**

The following summary of the evidence is taken from Baker's verified complaint, her verified amended complaint, and Hamilton's sworn declaration and accompanying exhibits. See Goodman v. Diggs, 986 F.3d 493, 499 (4th Cir. 2021) (concluding that a plaintiff's "original and first amended complaints, which were verified and based on [the plaintiff's] personal knowledge," were "the equivalent of opposing affidavits" on summary judgment). The facts are either undisputed or presented in the light most favorable to Baker, the

nonmoving party on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Baker was incarcerated at the NRVRJ from on or about July 14, 2021, to August 25, 2022. Hamilton Decl., ECF No. 31-1, at ¶ 4. After filing this action, Baker was transferred to the custody of the Virginia Department of Corrections. Notice of Change of Address, ECF No. 15. She has since been released from incarceration. Notice of Change of Address, ECF No. 39.

During the first five months of her confinement at the NRVRJ, Baker was one of fifteen gay or bisexual women who were placed in segregation (also referred to as "lockdown" or "restrictive housing") by Hamilton. Compl., ECF No. 1, at 3. After receiving grievance paperwork on December 3, 2021, Baker filed a grievance accusing Hamilton of discrimination. Id. She then submitted a grievance appeal to the Superintendent on December 15, 2021, and she was released from segregation on December 21, 2021. Id.

The events giving rise to this action occurred six days later, on December 27, 2021, when Baker was sprayed with oleoresin capsicum or "pepper spray." It is undisputed that Hamilton deployed pepper spray inside Baker's cell, that he left her in the cell for nearly twenty minutes after deploying the chemical agent, and that he then had her moved back to segregation. However, they provide different accounts of what transpired prior to and during the encounter at Baker's cell.

I. Hamilton's Account

According to Hamilton, Baker "had a poor institutional record, including a documented history of unauthorized sexual relationships in the NRVRJ," and Hamilton was

2

aware of Baker's disciplinary record at the time of their interactions on December 27, 2021. Hamilton Decl. ¶ 6. Around noon that day, Hamilton learned that another officer had charged Baker with disciplinary offenses, including sexual misconduct. Id. ¶ 7. Based on the charges, Hamilton decided that Baker needed to be moved to a restrictive housing cell. Id. ¶ 8.

At approximately 2:45 p.m., Baker entered the pod to assist in placing Baker in lockdown, and he could hear her screaming and striking the cell door. Id. ¶ 10. He approached Baker's cell and explained that she was being moved to lockdown as a result of the recent charge of sexual misconduct. Id. ¶ 11. He then retrieved a cell phone from his pocket and showed Baker video footage that allegedly showed her kissing another inmate through a food pass door. Id.

Relying on an incident report that he prepared on December 27, 2021, Hamilton describes what occurred next as follows:

> She became very combative and started calling me a motherfucker, a murderer and a piece of shit. I said, "get on your bunk and place your hands behind your back." She said, "fuck you motherfucker, I ain't doing shit! You are a piece of shit! I'm going to fuck you up!" I said, "lay down on the floor and place your hands behind your back." She became verbally combative and started hitting the cell door. At 2:49 PM I said, "if you do not comply with my orders, I will be forced to deploy pepper spray. Lay down on the floor and place your hand behind your back." At 2:51 PM Officer Boyd unlocked the Plaintiff's cell, I maintained control of the cell door with the handle and placing my left foot sideways against the bottom of the cell door. I gave the Plaintiff one last order to lay down on the floor and place her hands behind her back. She refused and stepped back into her cell in a fighting stance. I opened the door wide enough to deploy pepper spray and secured the door. Pepper spray was deployed to bring the Plaintiff under control for Officer safety. The Plaintiff rushed the door and continued to be verbally combative and hitting the cell door. I advised Officers Boyd . . . and Hylton

3

> . . . to leave her in the cell until we could conduct a cell extraction.[1]

Id. ¶ 12 (brackets omitted) (quoting Def.'s Ex. E at 2).

At approximately 3:00 p.m., Hamilton advised a supervisor that he had deployed pepper spray and that a cell extraction would be necessary. Id. ¶ 13. On or about 3:08 p.m., an extraction team entered Baker's cell to remove her. Id. ¶ 14. According to Hamilton, Baker physically resisted officers' attempts to escort her out of the cell, and two officers were injured during the process. Id. The officers eventually removed Baker from the cell, placed her in a restraint chair, and escorted her out of the pod to be decontaminated. Id.

A medical form indicates that Baker was examined by a nurse at approximately 5:47 p.m. Def.'s Ex. E at 3, ECF No. 31-1. The nurse checked "yes" in response to being asked if there were any injuries and noted that there was "redness over upper extremities," "redness around [right] eye," and a "small laceration to [left] index finger." Id.

## II. Baker's Account

According to Baker, Hamilton entered her housing unit on December 27, 2021, after she had filed a grievance accusing him of sex discrimination, and "demand[ed her] to move into segregation again for being in an unauthorized relationship with another inmate." Compl. at 3. Baker asserts that the accusation was false and that she was not in the video that Hamilton showed her after approaching her cell door. Id. Consequently, when Hamilton directed her to get on her knees, Baker "demanded a supervisor." Id. Then, "[w]hen Hamilton repeated for

---

[1] According to incident reports prepared by Boyd and Hylton, Hamilton told them "to do [their] rounds and that he would come back in a while to extract Inmate Baker from her cell." Def.'s Ex. G at 2–3, ECF No. 31-1. Hamilton then remarked that "her decontamination will be fresh air." Id. (internal quotation marks omitted).

[Baker] to get on [her] knees in [her] locked cell, [she] said, 'Fuck you, get me your supervisor.'" Am. Compl., ECF No. 10, at 3.

At that point, while Baker was "as far away from [her] cell door as possible," Hamilton radioed the control room to open the cell door. Id. Baker describes what happened next as follows:

> When the door electronically popped, Hamilton held it shut with his hand while he looked both directions and behind him. When he saw no one was there he opened my cell door with one hand as he extended his other hand out and pepper sprayed me until the can ran out. He then locked my door back, turned and walked out of [the pod] where the housing officer Katherine Hylton found me 20 minutes later. She radioed for help. I was in a mental black out mode. I couldn't breathe, my body was on fire, and the puddle of pepper spray in my cell wasn't helpful.

Id.

Baker alleges that Officer Hylton escorted her to the shower for decontamination with the "assistance of everyone available except Hamilton." Id. Hamilton then had her placed in "23 hour lockdown," where she remained for over sixty days. Id. at 4.

## Procedural History

On June 29, 2022, Baker filed this civil action under 42 U.S.C. § 1983 against Hamilton and other defendants. In response to a conditional filing order, Baker filed an amended complaint on August 8, 2022, which only named Hamilton as a defendant. Liberally construed, the amended complaint asserts claims of excessive force and retaliation against Hamilton.

Hamilton has moved for summary judgment on both claims. He argues that no reasonable juror could find that he used excessive force, that he is entitled to qualified

immunity on the claim of excessive force, and that the claim of retaliation fails as a matter of law. Baker has responded to the motion, and it is ripe for disposition.

## Standard of Review

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 228 (2022) (quoting Fed. R. Civ. P. 56(a)). When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. Id.; see also Anderson, 477 U.S. at 255 (emphasizing that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). The court "may not weigh the evidence or make credibility determinations." Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks and citations omitted). Instead, the court is tasked with determining "whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) (noting that "where affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie") (internal quotation marks and citation omitted).

## Discussion

### I. Excessive Force Claim

Baker first asserts a claim of excessive force related to the use of pepper spray. The constitutional standard that applies to this claim depends on whether Baker was a convicted prisoner or a pretrial detainee at the time of the incident. A convicted prisoner's claim of excessive force is brought pursuant to the Eighth Amendment's prohibition against cruel and

unusual punishment, while a pretrial detainee's claim of excessive force is brought pursuant to the Due Process Clause of the Fourteenth Amendment. Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015). Because the current record does not reflect whether Baker was a convicted prisoner or a pretrial detainee at the time of the events in question, the court will analyze the claim of excessive force under both standards.

### A. Eighth Amendment

The Eighth Amendment prohibits correctional officials from unnecessarily and wantonly inflicting pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). A claim of excessive force in violation of the Eighth Amendment involves both an objective and a subjective component. Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" Id. (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough, but anything more will suffice." Id. In this case, the objective component is not at issue. Hamilton does not dispute that deploying pepper spray constitutes more than trivial force. See Greene v. Feaster, 733 F. App'x 80, 81–82 (4th Cir. 2018) (holding that the use of pepper spray for "two to three seconds" was sufficient to make out an excessive force claim).

The dispute in this case centers on the subjective component, which asks whether the defendant "acted with a sufficiently culpable state of mind." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "In contrast to the objective component, this is a demanding standard; the state of mind required . . . is wantonness in the infliction of pain." Brooks, 924 F.3d at 112 (internal quotation marks and citations omitted). "Whether an inmate can establish

7

that impermissible motive turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320–21).

The United States Court of Appeals for the Fourth Circuit has explained that "[c]orrections officers act in a good faith effort to maintain or restore discipline—that is, with a permissible motive—not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." Brooks, 924 F.3d at 113 (internal quotation marks and citation omitted). And in evaluating the subjective component, courts "owe officers wide ranging deference in their determinations that force is required to induce compliance with policies important to institutional security." Id. (internal quotation marks and citation omitted). The Fourth Circuit has also made clear, however, that "corrections officers cross the line into an impermissible motive—using force maliciously and for the very purpose of causing harm—when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Id. (internal quotation marks and citation omitted).

The subjective component may be proved through direct or circumstantial evidence. Dean, 984 F.3d at 308–-09. In Whitley, the Supreme Court identified "four non-exclusive factors" to assist in assessing whether an officer acted with a sufficiently culpable state of mind. Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008). Those factors are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Id.

(quoting Whitley, 475 U.S. at 321). "If a reasonable jury could find, based on inferences drawn under the Whitley factors or other evidence, that [a correctional officer] used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate." Dean, 984 F.3d at 302.

In moving for summary judgment, Hamilton argues that the Whitley factors weigh in his favor and that "the evidence is clear that [he] did not 'maliciously and sadistically' administer his pepper spray against the Plaintiff." Def.'s Br. Supp. Summ. J., ECF No. 31, at 12. Having reviewed the record and applicable case law, however, the court is unable to agree. Considering the evidence in the light most favorable to Baker and drawing all reasonable inferences in her favor, as the court must do at this stage of the proceedings, the court concludes that the inferences to be drawn from the Whitley factors and other evidence "are 'not so plain that they may be resolved as a matter of law' on summary judgment." Dean, 984 F.3d at 306 (quoting Brooks, 924 F.3d at 117).

With respect to the first and third Whitley factors—the need for the application of force and the perceived threat that the application of force was intended to quell—Hamilton contends that "officer safety required the deployment of pepper spray." Def.'s Br. Supp. Summ. J. at 10 (internal quotation marks and brackets omitted). As indicated above, the Fourth Circuit has explained that "officers employ force 'in good faith'—and thus permissibly—when they are motivated by an 'immediate risk[] to physical safety' or threat to prison order." Dean, 984 F.3d at 303 (emphasis added) (quoting Brooks, 924 F.3d at 113). According to Baker's verified pleadings, at the time Hamilton decided to deploy pepper spray, Baker was confined in a locked cell and standing as far away from her cell door as possible. Under those

9

circumstances, even if Baker verbally threatened Hamilton, a reasonable jury could question whether there was an "immediate risk" to Hamilton's "physical safety" or whether the need for force to protect officer safety was "so self-evident that it excluded the possibility of a malicious motive." Id. at 303–04 (internal quotation marks and citations omitted); see also Walker v. Bowersox, 526 F.3d 1186, 1189 (8th Cir. 2008) (finding that the use of pepper spray against an inmate who was in his cell but refused to move away from the food port presented a jury question); Marcum v. Moles, No. 2:21-cv-00107, 2022 WL 2794291, at *5 (S.D.W. Va. July 15, 2022) (concluding that a reasonable jury could find that an officer's use of pepper spray was simply intended to harm the plaintiff where the plaintiff's account of events had him "secure in his cell conversing with [the officer], albeit in a vulgar and argumentative tone, when [the officer] made a sarcastic retort and pepper sprayed him twice"); Murray v. Lilly, 426 F. Supp. 3d 245, 255 (S.D.W. Va. 2019) (denying summary judgment where the evidence viewed in the light most favorable to the plaintiff indicated that the defendants "essentially pepper sprayed an isolated prisoner through an opening in a locked door, while he was unable to attack any officer").

A reasonable jury could also find that the second Whitley factor—the relationship between the need for the use of force and the amount of force that was used—favors Baker at this stage of the proceedings, as does the fourth factor—whether actions were taken to temper the severity of the forceful response. The Fourth Circuit "held over [two decades] ago that '[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas <u>or other chemical agents in quantities greater than necessary</u> or for the sole purpose of infliction of pain.'" Iko, 535 F.3d at 225 (emphasis in original) (quoting

Williams, 77 F.3d at 763). And the Court has since made clear that its pronouncement in Williams "plainly reaches the use of pepper spray." Iko, 535 F.3d at 240. According to Baker, Hamilton "pepper sprayed [her] until the can ran out" and then left her in the locked cell for twenty minutes, during which time she could not breathe and felt like her body was on fire. Accepting Baker's version of the facts, a reasonable jury could find that the amount of pepper spray used by Hamilton was excessive and that he exacerbated the effects of the chemical agent by intentionally leaving her in the contaminated cell. See Furnace v. Sullivan, 705 F.3d 1021, 1028–30 (9th Cir. 2013) (reversing summary judgment in the defendants' favor on an excessive force claim where "one canister of pepper spray (whatever portion remained) was depleted and another was allegedly applied at some length," after an inmate refused to remove his hands from the tray slot); see also Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008) ("[S]ubjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions—here, the pepper spray lingering in the air and on him—can constitute excessive force.").

  Finally, there is other evidence in the record from which a reasonable jury could infer that Hamilton used force "not to induce compliance, but to punish [Baker] for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113. Baker had recently filed a grievance accusing Hamilton of discrimination, and she demanded to see his supervisor when he told her that she was being moved back to segregation. Additionally, Baker acknowledges that she responded with "fuck you" when he instructed her to get on her knees, Am. Compl. at 3, and Hamilton noted in his incident report that Baker called him "a mother fucker, a murder[er], and a piece of shit" and threatened to "fuck [him] up," Def.'s Ex. E at 2. As the

11

Fourth Circuit noted in Brooks, "a reasonable jury could take those statements into account in deciding whether [Hamilton used force] in a good faith effort to induce [Baker's] cooperation, or maliciously and in retaliation for [her] insubordination." Brooks, 924 F.3d at 116 (noting that incident reports included statements describing the prisoner's disrespectful attitude and alleged threats of future violence); see also Thompson v. Virginia, 878 F.3d 89, 90 (4th Cir. 2017) (recognizing that force applied against an inmate "in retaliation for filing grievances" is used "maliciously and sadistically to cause harm"); Boone v. Stallings, 583 F. App'x 174, 176–77 (4th Cir. 2014) (concluding that a reasonable jury could find that the amount of force used by officers was not justified if they accepted the plaintiff's allegations that "officers beat him and deployed pepper spray for some other reason than to maintain or restore discipline—for example, in retaliation for using vulgar language"); Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (holding that the use of a taser against a detainee just after she "forcefully stated 'fuck you'" to an officer could support an inference under Whitley that force was used "for the very purpose of harming and embarrassing" the detainee, rather than to restore order).

     In sum, the record contains evidence from which a reasonable jury could find that Hamilton used force maliciously and sadistically for the purpose of punishing Baker rather than to protect officer safety, rendering summary judgment in appropriate. In reaching this decision, the court does not condone Baker's admitted use of vulgar language or her refusal to comply with Hamilton's initial orders. See Brooks, 924 F.3d at 117 ("It is of course true . . . that inmates cannot be permitted to decide which orders they will obey, and when they obey them.") (internal quotation marks and citation omitted). Nonetheless, "the Eighth

Amendment does not permit a correctional officer to respond to a misbehaving inmate in kind." Boone, 583 F. App'x at 77. If Baker's version of events were to be believed, a jury could find that Hamilton's response to her behavior was retaliatory and excessive. Consequently, Hamilton is not entitled to summary judgment on the merits of the claim of excessive force in violation of the Eighth Amendment.

### B. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535–39 (1979)). To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against [her] was objectively unreasonable." Kingsley, 576 U.S. at 396–97. This standard "turns on the facts and circumstances of each case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at 397 (internal quotation marks and citations omitted). Because the applicable standard is objective, "the defendant's state of mind is not a matter that a plaintiff is required to prove." Id. at 395. Nonetheless, a pretrial detainee can also prevail by showing that a defendant's actions were taken with an intent to punish. Kingsley, 576 U.S. at 398 (citing Bell, 441 U.S. at 538); see also id. at 400 (emphasizing that "pretrial detainees (unlike convicted prisoners)

13

cannot be punished at all, much less maliciously and sadistically") (internal quotation marks and citation omitted).

Viewing the evidence in the light most favorable to Baker, the court is unable to include that a Fourteenth Amendment claim of excessive force fails as a matter of law. For the same reasons set forth above, a reasonable jury could find that the amount of force purposely used against Baker was objectively unreasonable and amounted to punishment. While Baker admits that she used vulgar language, refused to comply with Hamilton's initial orders, and requested a supervisor, she maintains that she was as far away from him as possible in her locked cell when he elected to spray her with pepper spray until the can ran out and then left her to suffer from its effects for twenty minutes. As other courts have noted, "[n]ot every instance of inmate resistance justifies the use of force, and the use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." Treats v. Morgan, 308 F.3d 868, 872–73 (8th Cir. 2002). Based on the evidence presented, the court is convinced that the question of whether the use of pepper spray was objectively unreasonable or a form of punishment must be decided by a jury. To the extent Hamilton seeks summary judgment on this issue, the motion is denied.

    **C.**  **Qualified immunity**

The factual disputes identified above also preclude the grant of summary judgment based on qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Danser v. Stansberry, 772 F.3d 340, 345 (4th Cir. 2014) (citing Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982)). When determining whether an official is protected by qualified immunity, the court must determine (1) whether the facts viewed in the plaintiff's favor make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time. See Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

In this case, the court has already determined that the evidence presented by Baker, when viewed in her favor, is sufficient to withstand summary judgment on a claim of excessive force in violation of the Eighth and Fourteenth Amendments. Thus, the court must decide whether the constitutional rights at issue were clearly established. A right is clearly established if it is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (alteration in the original) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

At the time of Baker's confinement, it had "long been established that [correctional] officials violate the Eighth Amendment by using 'mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" Greene, 733 F. App'x at 82 ((quoting Williams, 77 F.3d at 763). It was also clearly established "that inmates have a right to be free from pain inflicted maliciously and in order to cause harm, rather than in a good-faith effort to protect officer safety or prison order." Dean, 984 F.3d at 310. And, as relevant here, the Fourth Circuit had made clear that correctional officers "cross the line into an impermissible motive . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113. As already discussed, the record contains evidence that, when viewed in Baker's favor,

15

would allow a reasonable jury to find that Hamilton used pepper spray in a quantity greater than necessary under the circumstances and that he inflicted pain as a form or punishment or retaliation for intransigence or insubordination, rather than to quell any immediate risk to officers' physical safety. Accordingly, at this stage of the proceedings, qualified immunity does not bar an Eighth Amendment claim of excessive force.

The court reaches the same decision with respect to a claim of excessive force in violation of the Fourteenth Amendment. At the time of the events in question, the Supreme Court had long recognized that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham, 490 U.S. at 395 n.10. The Court had also made clear that "pretrial detainees . . . cannot be punished at all, much less maliciously and sadistically," and that the use of objectively unreasonable force against a pretrial detainee violates the detainee's Fourteenth Amendment rights. Kingsley, 576 U.S. at 396 –97, 400). Because Baker has presented evidence from which a reasonable jury could find that Hamilton's use of force was objectively unreasonable and amounted to punishment, qualified immunity does not bar a Fourteenth Amendment claim at this stage of the proceeding. See Orem, 523 F.3d at 449 (emphasizing that the use of force to punish or intimidate a detainee is "a use that is not objectively reasonable, is contrary to clearly established law, and is not protected by qualified immunity").

### II. Retaliation Claim

Baker also asserts a claim of retaliation against Hamilton. Liberally construed, her amended complaint alleges that Hamilton subjected her to pepper spray and placed her in segregation or lockdown again for sixty days in retaliation for filing a grievance against him.

It is well settled that correctional officials "violate the First Amendment by retaliating against inmates for filing grievances." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017). The Fourth Circuit has held that the framework set forth in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), an employment case, applies to inmates' retaliation claims. Martin v. Duffy ("Martin II"), 977 F.3d 294, 304 (4th Cir. 2020). Under this framework, the plaintiff bears the burden of establishing a prima facie case of retaliation. Id. at 299. To make out a prima facie case, a plaintiff must establish three elements: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took an adverse action that would deter a person of ordinary firmness from exercising his rights; and (3) that there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy ("Martin I"), 858 F.3d 239, 249–50 (4th Cir. 2017). If a plaintiff establishes a prima face case of retaliation, the defendant may defeat the claim by proving that he would have taken the same action in the absence of the protected conduct. Martin II, 977 F.3d at 299 (citing Mt. Healthy, 429 U.S. at 283).

In moving for summary judgment on Baker's claim of retaliation, Hamilton makes two arguments. First, he contends that Baker's "use of the [grievance] procedure does not constitute exercise of a constitutionally protected right." Def.'s Br. Supp. Mot. Summ. J. at 15. This argument is contrary to existing precedent. As indicated above, the Fourth Circuit has made clear that an inmate engages in activity protected by the First Amendment when he files a grievance against a correctional official. See Martin I, 858 F.3d at 249 ("The First Amendment protects the right to petition the Government for a redress of Grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are

17

incarcerated . . . . Thus, by alleging that he filed a grievance against a sergeant for battery, Martin has sufficiently pleaded that he engaged in protected conduct.") (collecting cases); see also Booker, 855 F.3d at 546 (concluding that "an inmate's First Amendment right to be free from retaliation for filing a grievance was clearly established" and, thus, that correctional officials were not entitled to qualified immunity on that basis).

Second, Hamilton argues that "other than the time sequence of events," Baker cites no evidence suggesting that his actions were motivated by her grievance. Def.'s Br. Supp. M. Summ. J. at 15. This argument is also unpersuasive at this stage of the proceedings. The Fourth Circuit has recognized that "temporal proximity alone" can create a genuine dispute as to causation. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 575 (4th Cir. 2015) (citing Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 706 (4th Cir. 2001)). The incidents at issue in this case occurred approximately three weeks after Baker filed a grievance against Hamilton and while her grievance appeal was still pending before the Superintendent. "Such close temporal proximity weighs heavily in favor of finding a genuine dispute as to causation." Jacobs, 780 F.3d at 575 (concluding that a genuine dispute as to causation existed in a disability case where the plaintiff was fired "just three weeks after sending her e-mail disclosing her disability"); see also Gregg-El v. Doe, 746 F. App'x 274, 275 (4th Cir. 2019) (concluding that the temporal proximity between an inmate's complaints and the denial of a prison job may support an inference of causation where the inmate learned of the adverse decision the month after he filed two grievances). Therefore, the court concludes that Hamilton is not entitled to summary judgment on the retaliation claim.

## **Conclusion**

For the reasons stated, Hamilton's motion for summary judgment, ECF No. 30, is **DENIED**. An appropriate order will be entered.

Entered: September 22, 2023

Michael F. Urbanski
Chief United States District Judge